UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF MISSISSIPPI
NORTHERN DIVISION

ANTHOY J. SANTANGELO, JR. AND JUNE LENOIR,
CO-EXECUTORS OF THE ESTATE OF NATALIE
SANTANGELO, DECEASED                                                    PLAINTIFFS

V.                                                    CIVIL ACTION NO. 3:12CV71DPJ-FKB

UNITED STATES OF AMERICA                                                DEFENDANT

ORDER

        This tax-refund action is before the Court on the cross-motions of the parties for summary

judgment.  Plaintiffs Anthony J. Santangelo, Jr. and June Lenoir, acting as co-excecutors of the

Estate of Natalie Santangelo, filed this suit seeking a refund of $152,903.  Once discovery was

completed, Plaintiffs filed a motion for summary judgment [28] seeking that amount, in addition

to attorneys' fees and costs associated with bringing suit.  Defendant the United States opposes

the motion, maintains that the tax was properly paid, and likewise moved for a summary

judgment [29] determination in its favor.  The parties have responded in opposition to the cross-

motions, and replies have been filed.

        These submissions reveal that the material facts underlying this action are not in dispute,

and that the parties agree the matter is suited for summary judgment.  *See* Pls.' Resp. [123];

Def.'s Opp'n [124].  The Court, having considered the memoranda and submissions of the

parties, along with the pertinent authorities, finds that the tax was correctly paid and no refund is

due.  Therefore, Plaintiffs' motion is denied; Defendant's motion is granted.

I.      Facts and Procedural History

        Natalie Santangelo owned 21,534 shares of common stock in HCA, Inc.  The stock was

divided into two certificates—one for 7,178 shares and one for 14,356 shares.  Rather than turn

the certificates over to a broker or bank, Santangelo maintained possession of the physical stock certificates.

In November 2006, HCA merged with Hercules Acquisition Corporation.  As part of the merger agreement, all common stock holders would receive $51 per share and their stock would be cancelled.  Pursuant to the merger agreement, HCA was required to immediately deposit the funds with a paying agent, and there is no dispute in the record evidence that this occurred on November 20, 2006.  This meant Santangelo was eligible to receive $1,098,234 as of that date.  To collect, Santanagelo was required to surrender the physical stock certificates or follow the steps outlined in the merger agreement for stockholders who had misplaced or lost their certificates.

Despite the funds being available in November 2006, neither Santangelo, nor her daughter Rita, who had power-of-attorney, took any action to obtain the proceeds prior to her death on March 29, 2007.  In other words, they took no steps to obtain the funds during the disputed tax year.  After Santangelo's death in November 2007, the stock certificate for 7,178 shares was located and redeemed, with the proceeds being deposited in the Estate account on January 8, 2008.  The second stock certificate for 14,356 shares was never found.  The Estate therefore followed the steps outlined for a lost certificate, culminating in a final payment on October 19, 2009.

Meanwhile, HCA, as it did with all of its prior stockholders, issued a Form 1099 indicating that Santangelo received taxable proceeds in the full amount in 2006.  In October 2007, after Santangelo's death, her Estate secured the assistance of accountant Alice Van Ryan

and filed her 2006 tax return.  Following the advice of Ryan, the Estate claimed as income on the 2006 return the full $1,098,234 reflected on the Form 1099.

The Estate now believes that was a mistake.  The co-executors insist the income should not have been claimed in 2006, because it was not actually received in 2006.[1]  So Plaintiffs seek a refund of overpayment as to the 2006 return in the amount of $152,903.  The United States counters that the income was properly claimed on the 2006 tax return because it was constructively received and no refund is due.

The parties' cross-motions for summary judgment are fully briefed.  The Court has jurisdiction over the parties and subject matter and is prepared to rule.

II.     Standard

Summary judgment is warranted under Rule 56(a) of the Federal Rules of Civil Procedure when evidence reveals no genuine dispute regarding any material fact and that the moving party is entitled to judgment as a matter of law.  The rule "mandates the entry of summary judgment, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial."  *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986).

The party moving for summary judgment "bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of [the record] which it believes demonstrate the absence of a genuine issue of material fact."  *Id.* at 323.  The

---

[1]  The Estate contends that no income tax is due on the receipt of funds from the redemption of the stock, because the Estate instead paid estate tax on the stock.  *See* Pls.' Mem. [32] at 7.

3

nonmoving party must then "go beyond the pleadings" and "designate 'specific facts showing that there is a genuine issue for trial.'" *Id.* at 324 (citation omitted).  In reviewing the evidence, factual controversies are to be resolved in favor of the nonmovant, "but only when . . . both parties have submitted evidence of contradictory facts."  *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994).  When such contradictory facts exist, the court may "not make credibility determinations or weigh the evidence."  *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).  Conclusory allegations, speculation, unsubstantiated assertions, and legalistic arguments have never constituted an adequate substitute for specific facts showing a genuine issue for trial.  *TIG Ins. Co. v. Sedgwick James of Wash.*, 276 F.3d 754, 759 (5th Cir. 2002); *Little*, 37 F.3d at 1075; *SEC v. Recile*, 10 F.3d 1093, 1097 (5th Cir. 1993).

Finally, it must be noted that Plaintiffs offer a number of factual arguments for which they offered no citation to the record evidence.  Rule 56(c)(1) states that a party asserting that a fact "is genuinely disputed must support the assertion by: (A) *citing* to *particular parts* of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations . . . , admissions, interrogatory answers, or other materials." (emphasis added).  And Rule 56(c)(3) states that "[t]he court need consider only the cited materials, but it may consider other materials in the record."  "If a party fails to properly support an assertion of fact . . . the court may . . . grant summary judgment if the motion and supporting materials—including the facts considered undisputed—show that the movant is entitled to it . . . ."  Fed. R. Civ. P. 56(e)(3).

III.     Analysis

    A.     Refund Suits

"United States district courts, along with the United States Court of Federal Claims, have original jurisdiction over tax refund suits such as this case." *Estate of Cederloff v. United States*, No. Civ. A. DKC 08-2863, 2010 WL 3548901, at *3 (D. Md. Sept. 10, 2010) (citing 28 U.S.C § 1346(a)(1); *Dang v. Comm'r of Internal Revenue*, 259 F.3d 204, 208 (4th Cir. 2001)). "The court undertakes a de novo review of the tax decision, as 'a tax refund suit is not an appellate review of the administrative decision that was made by the IRS; instead, the Court must make an independent decision as to whether the taxpayer is due a refund.'" *Id.* (quoting *Wells Fargo & Co. & Subsidiaries v. United States*, 91 Fed. Cl. 35, 75 (2010) (additional quotations omitted)). Once the Government has introduced evidence that it properly assessed the liability, the taxpayer has the burden of proving by a preponderance of the evidence that the assessment is erroneous. *See Portillo v. Comm'r of Internal Revenue*, 932 F.2d 1128, 1135 (5th Cir. 1991).

    B.     Constructive Receipt

Natalie Santangelo, like most individual taxpayers, was on a cash basis of accounting. Generally, such taxpayers claim income in the year it is received. The United States, invoking the doctrine of constructive receipt, asserts that Santangelo constructively received the stock proceeds in 2006 and correctly paid the tax due on her 2006 return. In contrast, Plaintiffs maintain the proceeds should not have been listed on the 2006 return because they were not actually received in 2006.

Section 451 of the Internal Revenue Code provides the general rule that income is taxable when funds are received.

> The amount of any items of gross income shall be included in the gross income
> for the taxable year in which received by the taxpayer, unless, under the method of
> accounting used in computing taxable income, such amount is to be property
> accounted for as a different period.

26 U.S.C. § 451.  In addition, the tax regulations provide for reporting of income that is actually

or *constructively* received during the tax year.

> Income although not actually reduced to a taxpayer's possession is constructively
> received by him in the taxable year during which it is credited to his account, set
> apart for him, or otherwise made available so that he may draw upon it at any
> time, or so that he could have drawn upon it during the taxable year if notice of
> intention to withdraw had been given.  However, income is not constructively
> received if the taxpayer's control of its receipt is subject to substantial limitations
> or restrictions.

26 C.F. R. § 1.451-2(a).  The district court in *Oliver v. United States* succinctly described the

well-established constructive-receipt doctrine.

> While a taxpayer, so long as he acts within the law, has the right to minimize his
> federal income tax obligations or avoid them altogether if he can, he may not
> arbitrarily select the year in which a given item of income is to be reported.
> Where income, although not actually received, is unqualifiedly and without
> substantial limitation available to the taxpayer in a given year, and his failure
> actually to receive it is due to nothing other than his own volition, then such
> income is considered as having been constructively received during that year, and
> it must be so reported and the tax paid thereon.  But, if during the tax year in
> question the taxpayer has no right to receive income, or if his right to receive it is
> subject to substantial qualifications or restrictions, then he will not be deemed to
> have received such income constructively during that year.

193 F. Supp. 93 933 (E.D. Ark. 1961) (internal citations omitted).

Plaintiffs begrudgingly acknowledge the constructive-receipt theory—calling it a

"creative approach"—but repeatedly urge that it has no application for two reasons.  They first

contend that the three-year delay in obtaining the funds negates the theory.  They next contend

that substantial obstacles blocked access to the funds and therefore the taxable income was not

constructively received in 2006.  Plaintiffs offer neither legal authority nor record evidence to support these arguments.

Starting with the delay, there is no dispute that final payment was received in 2009, about three years after the 2006 tax year.  Plaintiffs therefore argue that constructive receipt has no force "due to the length of time it took for the taxpayers to ultimately obtain the redemption proceeds."  Pls.' Resp. [122] at 4.  Plaintiffs fail to cite any legal authority for this argument which would seemingly negate the constructive-receipt theory.  Regardless, the Fifth Circuit has applied constructive receipt to even longer delays.  *See United States v. Hancock Bank*, 400 F.2d 975 (5th Cir. 1968) (applying doctrine of constructive receipt to royalty payment set aside in a special account for six years during will dispute in state court); *Williams v. United States*, 219 F.2d 523 (5th Cir. 1955) (finding constructive receipt of full sales price despite fact that seller/taxpayer had portion of sales price deposited in an escrow account to be paid out over a four-year period).

As for their second argument, Plaintiffs repeatedly assert that constructive receipt does not apply because HCA "was actively resisting payment of the redemption proceeds to the taxpayers" and the funds were therefore subject to substantial limitations or restrictions.  Pls.' Resp. [122] at 6.  This factual assertion comes without reference to any record evidence—much less the particular parts of the record—and is therefore immaterial.  Fed. R. Civ. P. 56(c)(3), (e)(3); *see also TIG Ins. Co.*, 276 F.3d at 759 (holding that conclusory allegations and unsubstantiated assertions cannot defeat summary judgment).

Aside from this procedural shortcoming in Plaintiffs' response, the undisputed record evidence paints a very different picture.  There is no dispute in the record that HCA immediately

7

deposited the funds in November 2006; that the funds were available to Santangelo as of that date; and that neither she nor her daughter Rita—who had power of attorney—made any effort to obtain those funds during the tax year they were made available to them or at any other time before her death in November 2007.

That is precisely the type behavior that triggers constructive receipt.  As noted above, when funds are "unqualifiedly and without substantial limitation available to the taxpayer in the given tax year," and the taxpayer's "failure actually to receive [income] is due to nothing other than [her] own volition, then such income is considered as having been constructively received during that year."  *Oliver*, 193 F.Supp. at 933; *see also Burke v. Comm'r of Internal Revenue*, 485 F.3d 171 (1st Cir. 2007) ("A self-imposed restriction on the availability of income cannot legally defer recognition of that income."); *Williams v. United States*, 219 F.2d 523, 525–27 (5th Cir. 1955) (holding that self-imposed limitations will not make the income taxable in another year).  Santangelo was in constructive receipt of the taxable funds.

Plaintiffs essentially ignore the events in 2006 and attempt instead to focus the Court's attention on events in 2008 and 2009.  They argue, for example, that they faced difficulties finding the certificates after Santangelo's death and that delays occurred when they attempted to follow the lost-certificate procedure.  Even assuming these facts are true, this evidence says nothing of the undisputed fact that Santangelo and her daughter made no attempt to obtain the funds in 2006 when they were first available.

And to the extent the certificates were lost, this was a self-imposed event.  As noted by the United States, the Estate's attorney Robert Williard testified that obtaining the proceeds "[w]ouldn't have been a problem" if the Estate had possession of both certificates.  Williard Dep.

[120-15] at 70.  *See Walter v. United States*, 148 F.3d 1027, 1029 (8th Cir. 1998) (finding

taxpayers had constructively received funds where they had received a check, but a lost it, noting

that "[l]osing the check was a restriction on collection imposed by the [taxpayers]"); *Estate of*

*Shelton v. Comm'r of Internal Revenue*, 612 F.2d 1276, 1279–80 (10th Cir. 1980) (finding

requirement that the taxpayer post a bond in order to obtain payment was not a substantial

limitation or restriction); *Loose v. United States*, 74 F.2d 147, 150 (8th Cir. 1934) (finding

interest coupons on bonds which matured before, but were not presented until after, the holder's

death were constructively received because there was nothing to prevent the holder from

demanding payment, aside from his physical and mental handicap following a stroke); *see also*

26 C.F.R. § 1.451-2(b) ("Amount payable with respect to interest coupons which have matured

and are payable but which have not been cashed are constructively received in the taxable year

during which the coupons mature, unless it can be shown that there are no funds available for

payment of the interest during such year.").

        In sum, the Court is satisfied that the United States has produced evidence that it properly

assessed the tax in 2006 consistent with the doctrine of constructive receipt.  Plaintiffs have not

shown by a preponderance of the evidence that the assessment is erroneous.

C.      Conduct of IRS

        Aside from the constructive-receipt issue, the Estate takes issue with the conduct of the

IRS before suit was filed and insists its actions "have a significant bearing on this matter" and

"illustrate the cavalier and reckless manner in which the taxpayer has been treated . . . ."  Pls.'

Resp. [122] at 3.  Before filing suit, the Estate filed a Claim for Refund with the IRS, which was

denied.  The denial letter advised the taxpayers that they could appeal the decision or file suit in

district court.  Plaintiffs contend that they pursued an appeal and were entitled to a conference

with an appeals officer, but the conference never materialized.  In addition, Plaintiffs point to

Revenue Agent Marcie Jones's recommendation, following a one-day audit, that the IRS owed

the Estate a refund.  But Jones lacked personal authority to authorize a refund, her

recommendation was rejected by her supervisor, and the case was returned to Jones for further

investigation.  Plaintiffs concede that Jones's finding was not binding on the IRS, but still assert

that her finding is "instructive."  *Id.* at 3.

These arguments are not persuasive.  As explained above, the Court conducts a de novo

review of the facts.  It has done so and concludes that the doctrine of constructive receipt applies

to Santangelo's stock redemption.  The conduct of the IRS during pre-suit administrative

proceedings is of no moment.  *See R.E. Dietz Corp. v. United States*, 939 F.2d 1, 4 (2d Cir. 1991)

("The factual and legal analysis employed by the Commissioner is of no consequence to the

district court."); *Ruth v. United States*, 823 F.2d 1091, 1094 (7th Cir. 1987) ("In general, courts

will not look behind an assessment to evaluate the procedure and evidence used in making the

assessment.").

III.    Conclusion

The Court has considered all of the arguments raised by the parties and those not

addressed in this Order would not change the outcome.  Based on the foregoing, the Court finds

that Plaintiffs' motion for summary judgment [28] should be denied and Defendant's motion for

summary judgment [29] should be granted.  This action is dismissed with prejudice.

A separate judgment will be entered in accordance with Federal Rule of Civil Procedure

58.

**SO ORDERED AND ADJUDGED** this the 19th day of March, 2014.

s/ *Daniel P. Jordan III*
UNITED STATES DISTRICT JUDGE